Filed 12/9/22 P. v. Perales CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>NORMAN ORLANDO PERALES, JR.,<br><br>  Defendant and Appellant. | H049723<br>(Monterey County<br> Super. Ct. No. 21CR007217) |

Defendant Norman Orlando Perales, Jr., pleaded no contest to evading an officer (Veh. Code, § 2800.2, subd. (a)), and admitted a prior strike conviction (Pen. Code, §§ 667, subds. (b)-(i), 1170.12).[1] The trial court sentenced Perales to the low term of one year four months in state prison, which was doubled to 32 months due to the prior strike conviction (§ 1170.12, subd. (c)(1)), and imposed $674 in fines and fees.

Perales appeals, arguing that his trial counsel was prejudicially ineffective by failing to request mental health diversion under section 1001.36. He also argues that the trial court violated his due process rights by imposing fines and fees without determining his ability to pay. We conclude that trial counsel was not prejudicially ineffective and that the ability-to-pay claim does not warrant reversal. Accordingly, we affirm the judgment.

---

[1] Unspecified statutory references are to the Penal Code.

## I. Background[2]

On September 8, 2021, at 12:25 a.m., a California Highway Patrol (CHP) officer observed Perales's vehicle travelling at an estimated 80 miles per hour in a posted 65 miles per hour zone. The officer activated his patrol lights and attempted to pull Perales over. Perales suddenly weaved across two lanes of traffic and took an exit ramp. The officer pursued Perales, reaching speeds of over 100 miles per hour. A spike strip was deployed, causing at least one of Perales's tires to go flat. Perales continued driving, eventually crashing into a tree. Perales fled on foot and was pursued by a CHP officer, who tackled him to the ground. Perales continued to resist the CHP officer, who then tased Perales and arrested him. Perales was transported to the hospital, and while en route, said that "he hears voices in his head," that he used methamphetamine prior to his arrest, and that he had a pipe in his sock. Once Perales was "medically cleared," he was transported to Monterey County Jail.

The Monterey County District Attorney filed a complaint charging Perales with evading an officer (count 1; Veh. Code, § 2800.2, subd. (a)), evading an officer by driving on a highway in the opposite direction of lawful traffic (count 2; Veh. Code, § 2800.4), driving under the influence of drugs (count 3; Veh. Code, § 23152, subd. (f)), resisting a peace officer (count 4; § 148, subd. (a)), driving without a valid driver's license (count 5; Veh. Code, § 12500, subd. (a)), and possession of paraphernalia used for smoking a controlled substance (count 6; Health & Saf. Code, § 11364, subd. (a)). The complaint also alleged that Perales had suffered a prior strike conviction (§§ 667, subds. (b)-(i), 1170.12).

---

[2] The factual background is derived from the probation report, which contains facts from a California Highway Patrol report. The parties stipulated to the facts in that report as the factual basis for the offense.

In November 2021, Perales agreed to plead no contest to a single count of evading an officer (Veh. Code, § 2800.2, subd. (a)) and admit the prior strike allegation. In exchange, the prosecution agreed to dismiss the remaining counts at sentencing. The plea also stipulated that Perales would receive a sentence of no more than 32 months in state prison, that the trial court had the discretion to grant felony probation, and that Perales could move to dismiss the prior strike allegation.

At a hearing that same month, Perales pleaded no contest to the offense and admitted the enhancement allegation as stipulated in the plea agreement. Prior to pleading no contest, Perales acknowledged and stated he understood that the court will impose a restitution fine between $300 and $10,000, with the exact amount to be determined by the sentencing judge. Perales later moved to dismiss the prior strike pursuant to section 1385 and *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497.

In an interview with the probation officer, Perales "reported that he has 'lived a life of being disruptive.' " He stated that he "runs due [to] not wanting to hurt anyone." He elaborated that he "has only been running from himself and his mental health issues." He reported that "he is now able to accept his mental health issues and can live a better life." Now that he "understood his mental health," Perales stated he believed "he can 'make it' this time."

The matter was set for sentencing on January 11, 2022. At the hearing, the court stated that it had reviewed all materials submitted, including the probation report and motion to dismiss the prior strike. The prosecutor urged the court to impose a sentence of 32 months and to deny the motion to dismiss the prior strike. The prosecutor noted that the offense of conviction "was excessively dangerous," and that Perales's criminal record "extends both before and after this offense, and he has continued to commit crimes." Defense counsel requested a two-year suspended sentence "under whatever terms and conditions are agreeable to all parties." He asserted that Perales's background included "an extremely difficult childhood." He characterized Perales as someone "who

3

did get into drugs and the wrong path very young, suffers from post-traumatic stress disorder, as well as substance abuse disorder, [which] completely disrupted his life." Defense counsel also argued that Perales had since become "very committed to engaging in treatment," and thus was a "good candidate for probation" with electronic monitoring. The prosecutor responded by noting that while on post release community supervision, Perales had "walked away" from a treatment program and had twice been referred to a program for intensive outpatient treatment and had "failed."

After listening to argument, the trial court denied the motion to dismiss the prior strike. The court noted that Perales's present offense followed a number of prior adult felony convictions between 1996 and 2020, 13 traffic offenses in that same time period, and repeated violations of the terms and conditions of probation. The court also noted that Perales had incurred four violations or sanctions during his current post release supervision, "rendering his performance poor." Although the court acknowledged the existence of mitigating factors weighing "strongly" in favor of dismissal of the prior strike allegation, there was also "substantial evidence of countervailing considerations" weighing against mitigation. The court expressly noted Perales's prior attempts at substance abuse treatment, but found he had "failed to take advantage of repeatedly-offered services that are intended to offer rehabilitation," and had "squandered those opportunities on multiple occasions." The court also found that although Perales "suffers from drug addiction and mental health issues, he now only seem[ed] driven to change in light of the fact that he faces yet another commitment to state prison."

Turning to sentencing, the court imposed the low term of 16 months and then doubled it pursuant to section 1170.12, subdivision (c)(1), resulting in a term of 32 months in state prison. The court also imposed fines and fees: (1) a restitution fine of $600 (§ 1202.4, subd. (b)); (2) a suspended restitution fine of $600 (§§ 1202.4, subd. (b), 1202.44, 1202.45); (3) a court operations assessment of $40 (§ 1465.8, subd. (a)(1)); (4) a court facilities assessment of $30 (Gov. Code, § 70373); and (5) an emergency medical

4

air transportation fee of $4 (Gov. Code, § 76000.10). All remaining counts were dismissed on the prosecution's motion pursuant to section 1385.

Perales timely appealed.

## II. Discussion

### A. Mental Health Diversion

Perales argues that he received ineffective assistance of counsel when his trial counsel failed to request mental health diversion under section 1001.36 at the time of sentencing. The Attorney General contends that any such motion at the time of sentencing would have been untimely, and that Perales cannot demonstrate a reasonable likelihood of a more favorable outcome.

### 1. Standard of Review

Effective June 27, 2018, the Legislature enacted sections 1001.35 and 1001.36, which created a pretrial diversion program for certain defendants with mental health disorders. (Stats. 2018, ch. 34, § 24.) Section 1001.36 provides that a trial court may grant pretrial mental health diversion if it finds that the defendant is eligible because, among other factors, the defendant suffers from a qualifying mental disorder, the disorder played a significant role in the commission of the charged offense, and the defendant's symptoms will respond to mental health treatment. (§ 1001.36, subd. (b)(1)(A)-(F); *People v. Frahs* (2020) 9 Cal.5th 618, 626-627.)

To be granted pretrial diversion under statute, the court must be "satisfied that the defendant suffers from a mental disorder as identified in the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders, including, but not limited to, bipolar disorder, schizophrenia, schizoaffective disorder, or post-traumatic stress disorder, but excluding antisocial personality disorder, borderline personality disorder, and pedophilia." (§ 1001.36, subd. (b)(1)(A).)

The court must be "satisfied that the defendant's mental disorder was a significant factor in the commission of the charged offense." (§ 1001.36, subd. (b)(1)(B).) "A court

5

may conclude that a defendant's mental disorder was a significant factor in the commission of the charged offense if, after reviewing any relevant and credible evidence . . . the court concludes that the defendant's mental disorder substantially contributed to the defendant's involvement in the commission of the offense." (*Ibid.*)

The statute defines "pretrial diversion" to "mean[] the postponement of prosecution, either temporarily or permanently, at any point in the judicial process from the point at which the accused is charged until adjudication, to allow the defendant to undergo mental health treatment . . . ." (§ 1001.36, subd. (c).) The maximum period of diversion is two years, and if the defendant performs satisfactorily in diversion, the trial court must dismiss the criminal charges that were the subject of the criminal proceedings at the time of the initial diversion. (§ 1001.36, subds. (c)(3), (e).)

A defendant bears the burden of making a prima facie showing that he or she meets the minimum requirements of eligibility for diversion. (§ 1001.36, subd. (b)(3).) Even if a defendant otherwise satisfies the six eligibility requirements, the court must nonetheless be satisfied that the recommended mental health treatment program "will meet the specialized mental health treatment needs of the defendant." (§ 1001.36, subd. (c)(1)(A).) "Before approving a proposed treatment program, the court shall consider the request of the defense, the request of the prosecution, the needs of the defendant, and the interests of the community." (§ 1001.36, subd. (c)(1)(B).)

To prevail on a claim of ineffective assistance of counsel, a criminal defendant must establish both that his or her counsel's performance was deficient and that he or she suffered prejudice. (*Strickland v. Washington* (1984) 466 U.S. 668, 687.) The deficient performance component of an ineffective assistance of counsel claim requires a showing that "counsel's representation fell below an objective standard of reasonableness" under prevailing professional norms. (*Id.* at p. 688.) Regarding prejudice, a "defendant must show that there is a reasonable probability"—meaning "a probability sufficient to undermine confidence in the outcome"—"that, but for counsel's unprofessional errors,

6

the result of the proceeding would have been different." (*Id.* at p. 694.) Prejudice requires a showing of "a ' "demonstrable reality," not simply speculation.' " (*People v. Fairbank* (1997) 16 Cal.4th 1223, 1241 (*Fairbank*).)

When a claim of ineffective assistance of counsel is made on direct appeal, reversal is warranted only if "(1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation." (*People v. Mai* (2013) 57 Cal.4th 986, 1009 (*Mai*); see also *People v. Mickel* (2016) 2 Cal.5th 181, 198 ["a reviewing court will reverse a conviction based on ineffective assistance of counsel on direct appeal only if there is affirmative evidence that counsel had ' " 'no rational tactical purpose' " ' for an action or omission"].) Our high court has observed that "certain practical constraints make it more difficult to address ineffective assistance claims on direct appeal rather than in the context of a habeas corpus proceeding. [Citations.] The record on appeal may not explain why counsel chose to act as he or she did. Under those circumstances, a reviewing court has no basis on which to determine whether counsel had a legitimate reason for making a particular decision, or whether counsel's actions or failure to take certain actions were objectively unreasonable." (*Mickel*, *supra*, at p. 198.) Thus, "we begin with the presumption that counsel's actions fall within the broad range of reasonableness, and afford 'great deference to counsel's tactical decisions.' " (*Ibid.*)

### 2. *Perales Has Not Demonstrated Ineffective Assistance of Counsel*

Here, the record is silent regarding why defense counsel did not request mental health diversion at sentencing. Thus, reversal on direct appeal for ineffective assistance of counsel is warranted only if "the record affirmatively discloses counsel had no rational tactical purpose" for the challenged omission. (*Mai*, *supra*, 57 Cal.4th at p. 1009.)

In this case, defense counsel could have reasonably concluded that Perales did not have a reasonable likelihood of demonstrating that he qualified for diversion.

Although Perales's clinical examination showed among other things that Perales believed "he may have been diagnosed with PTSD [post-traumatic stress disorder] in 2017,"[3] there was no examination in the record assessing a definitive diagnosis of PTSD or what factor it might have played *in the charged offense*. (See § 1001.36, subd. (b)(1)(B) [predicating eligibility on the mental disorder being "a significant factor in the commission of the charged offense"].) Nor was there any strong evidence in the record as to whether Perales would be amenable to treatment. (See § 1001.36, subd. (b)(1)(C) [predicating eligibility on a qualified mental health expert's finding that the mental health disorder "would respond to mental health treatment"]; *id.*, subd. (b)(1)(E) [and the defendant "agrees to comply with treatment as a condition of diversion"].) In fact, the clinical examination report suggested the opposite. The report noted that Perales had undergone substance abuse treatment in the past, that it had not been effective, and he had relapsed because he had not addressed his underlying issues. Defense counsel could have reasonably concluded that because Perales did not reasonably meet some of the requirements for mental health diversion, the best course was to request, as happened in the trial court, probation with electronic monitoring and conditions related to Perales's treatment needs. (See *People v. Price* (1991) 1 Cal.4th 324, 387 ["Counsel does not render ineffective assistance by failing to make motions or objections that counsel reasonably determines would be futile."]; *People v. Thompson* (2010) 49 Cal.4th 79, 122 ["Counsel is not ineffective for failing to make frivolous or futile motions."].)

Moreover, defense counsel could have also reasonably concluded that a request for mental health diversion would have been barred by the terms of the plea agreement. " '[A] judge who has accepted a plea bargain is bound to impose a sentence within the

---

[3] The examiner elsewhere stated, "PTSD is noted, and does not respond to medication," and indicated that Perales suffered from some degree of substance abuse and PTSD, which were related and possibly exacerbated by one another.

limits of that bargain. [Citation.] "A plea agreement is, in essence, a contract between the defendant and the prosecutor to which the court consents to be bound." [Citation.] Should the court consider the plea bargain to be unacceptable, its remedy is to reject it, not to violate it, directly or indirectly. [Citation.] Once the court has accepted the terms of the negotiated plea, "[it] lacks jurisdiction to alter the terms of a plea bargain so that it becomes more favorable to a defendant unless, of course, the parties agree." ' " (*People v. Segura* (2008) 44 Cal.4th 921, 931.) Here, Perales agreed to plead no contest and receive a prison sentence of not more than 32 months or a term of felony probation in exchange for the prosecution's agreement to dismiss the remaining counts. Mental health diversion was not part of the plea agreement. Based on the plain language of the agreement, defense counsel could have reasonably concluded that the trial court was barred from granting mental health diversion and that any such request would have been futile.[4]

Finally, even assuming that Perales could establish that defense counsel's performance was deficient by not moving for mental health diversion at the time of the sentencing, Perales cannot demonstrate a reasonable likelihood of a more favorable outcome. In ruling on Perales's motion to dismiss the prior strike, the trial court explicitly considered aspects of Perales's mental health claims. At the hearing, the court acknowledged that Perales "suffers from drug addiction and mental health issues," but found that he appeared "driven to change" only in light of his potential state prison commitment. Put another way, the court did not find Perales amenable to treatment. Finally, the trial court's denial of the motion to dismiss the prior strike also necessarily made Perales ineligible for mental health diversion. (§ 667, subd. (c)(2), (4) [prohibiting

_____

[4] In so holding, we do *not* decide whether the terms of the plea agreement in fact barred the trial court from granting mental health diversion. Rather, we only conclude that counsel would not have been ineffective for believing Perales bound to the sentencing outcomes permitted by the plea agreement.

9

a defendant who is ineligible for probation or who has a prior strike from receiving a suspended sentence or diversion].) To receive a different outcome at sentencing with respect to mental health diversion, Perales would have needed to convince the trial court to dismiss the prior strike, something it was clearly disinclined to do.

In sum, Perales has not affirmatively shown that defense counsel had no rational tactical purpose in failing to request mental health diversion at the time of sentencing or that the result of the proceeding would have been different had counsel done so. Accordingly, Perales's ineffective assistance of counsel claim must be rejected.[5]

### B. Ability to Pay

Relying on *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*), Perales argues that the trial court erred by imposing three assessments and a restitution fine for a total of $674 without determining if he had the present ability to pay. The Attorney General contends that Perales's claim is forfeited and substantively unavailing. We agree.

### 1. Applicable Law

In *Dueñas*, the Second District Court of Appeal, Division Seven, reversed an order imposing the court operations assessment (§ 1465.8) and the court facilities assessment (Gov. Code, § 70373) after concluding that it was "fundamentally unfair" and violated due process under the federal and California Constitutions to impose the assessments without a determination of the defendant's ability to pay. (*Dueñas*, *supra*, 30

---

[5] The Attorney General argues a request for mental health diversion would have been untimely as it was not made prior to entry of Perales's no contest plea. This issue is currently pending before the California Supreme Court. (*People v. Graham* (2021) 64 Cal.App.5th 827, 835, review granted Sept. 1, 2021, S269509; *People v. Braden* (2021) 63 Cal.App.5th 330, 333, review granted July 14, 2021, S268925; *People v. Curry* (2021) 62 Cal.App.5th 314, 321, review granted July 14, 2021, S267394.) Because we resolve this ineffective assistance of counsel claim on other grounds, we do not address the Attorney General's assertion that any request for diversion at the time of sentencing would have been untimely.

Cal.App.5th at p. 1168.) The court also concluded that the execution of a restitution fine under section 1202.4 "must be stayed unless and until the trial court holds an ability to pay hearing and concludes that the defendant has the present ability to pay the restitution fine." (*Dueñas*, *supra*, at p. 1164.) The *Dueñas* opinion issued on January 8, 2019.[6] (*Dueñas*, *supra*, at p. 1164.)

### 2. *Perales Waived His* Dueñas *Claim*

In general, a defendant who fails to object to the imposition of fines, fees, and assessments at sentencing forfeits the right to challenge those fines, fees, and assessments on appeal. (*People v. Aguilar* (2015) 60 Cal.4th 862, 864.) The constitutional nature of a defendant's ability-to-pay claim does not justify a deviation from the forfeiture rule. (*People v. Trujillo* (2015) 60 Cal.4th 850, 856; *People v. McCullough* (2013) 56 Cal.4th 589, 591-593; *People v. Torres* (2019) 39 Cal.App.5th 849, 860 & fn. 4.) Failure to object may be excused when an objection would have been futile or wholly unsupported by substantive law then in existence. (*People v. Aviles* (2019) 39 Cal.App.5th 1055, 1073 (*Aviles*).) Here, the opinion in *Dueñas* was issued in January 2019, and Perales was sentenced in January 2022. Perales was therefore on notice that legal grounds existed for asserting an inability to pay, and he has not shown that an objection would have been futile. In these circumstances, the claim on appeal has been forfeited.

Even if we were to consider the merits of the claim, we would find no error. The gravamen of Perales's claim is that the trial court imposed fines and fees without first determining a present ability to pay. However, "[e]rror may not be presumed from a silent record. [Citation.] ' "[A] trial court is presumed to have been aware of and

---

[6] The question whether a court must consider a defendant's ability to pay before imposing or executing fines, fees, and assessments and, if so, which party bears the burden of proof regarding the defendant's ability to pay, is currently pending before the California Supreme Court. (See *People v. Kopp* (2019) 38 Cal.App.5th 47, review granted Nov. 13, 2019, S257844.) We express no opinion here about whether *Dueñas* or other ability-to-pay cases were correctly decided.

followed the applicable law." ' " (*People v. Brown* (2007) 147 Cal.App.4th 1213, 1229.) The probation report noted that while Perales's financial resources were "minimal, [he] will have some financial opportunities while serving a sentence at the California Department of Corrections and Rehabilitation." Further, as we discussed, *Dueñas* had issued several years prior to sentencing in this case. Thus, we must presume that the trial court understood and followed the applicable law, which included making a finding that Perales had an ability to pay.

Perales also argues that trial counsel's failure to object to the fines and fees constitutes ineffective assistance of counsel. As we concluded, however, the trial court's imposition impliedly included a finding that defendant had the ability to pay, which was reasonable in light of Perales's state prison commitment and eventual release. (*Aviles*, *supra*, 39 Cal.App.5th at p. 1076; see also *People v. Jones* (2019) 36 Cal.App.5th 1028, 1035.) To show ineffective assistance of counsel, Perales must show a reasonable probability that, had counsel objected to the $674 in fines and fees, the result of the proceedings would have been different. (*Fairbank*, *supra*, 16 Cal.4th at p. 1241.) On this record, we find no such reasonable probability. As a result, we reject Perales's claim that his counsel was prejudicially ineffective for failing to object to those fines and fees.

For these reasons, we reject Perales's challenge to the trial court's imposition of $674 in fines and fees.

### III. Disposition

The judgment is affirmed.

_____
                Wilson,  J.


WE CONCUR:




_____
    Bamattre-Manoukian,  Acting P.J.




_____
            Danner, J.




People v. Perales
H049723